STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,

Steven and Gale KAGEN, Intervening Plaintiffs,

v.

ACUITY, a mutual company,
Defendant-Respondent,

DR. K EXCAVATING, LLC and David R. Krause,
Defendants-Appellants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and
Allen L. Lembcke d/b/a Cliff & Al's Heating
Company, Defendants,

WEST BEND MUTUAL INSURANCE COMPANY,
Intervening Defendant.

Court of Appeals

*No. 04–1621. Submitted on briefs February 7, 2005.—Decided
March 15, 2005.*

2005 WI App 77

(Also reported in 695 N.W.2d 883.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Mark R. Feldmann* of *Menn, Teetaert & Beisenstein, Ltd.* of Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terri L. Weber* of *Nash, Spindler, Grimstad & McCracken, LLP* of Manitowoc.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.   Dr. K Excavating, LLC and David Krause[1] appeal a judgment declaring that Acuity has no duty under its business liability policy with Krause to defend or indemnify Krause for damages to Gayle and Steven Kagen's home. Those damages occurred when Krause was attempting to remove two fuel oil tanks and the oil they contained. During the removal, oil escaped onto the Kagens' property. Krause argues that Acuity has a duty to defend because (1) the residual smell of fuel oil in the Kagens' home caused "property damage" covered by Krause's policy with Acuity; (2) the policy's pollution exclusion does not unambiguously exclude property damage arising from smells or odors; and (3) the pollution exclusion does not allow Acuity to avoid coverage for damage caused by the non-toxic properties of a known contaminant. Because Acuity's pollution exclusion unambiguously excludes damages "arising from" the escape, dispersal, discharge, or release of fuel oil, we affirm the judgment.

---

[1] Dr. K Excavating is a limited liability company wholly owned by Krause. We thus refer to appellants collectively as "Krause."

## Background

¶ 2.  Sometime in 2001, the Kagens contacted Allen Lembcke of Cliff & Al's Heating Company about removing two fuel oil tanks from their property. Lembcke in turn arranged for Krause to siphon out any fuel oil remaining in the tanks and take them away.[2] On September 26, while Krause was removing the oil, one of the tanks ruptured or was otherwise damaged and fuel oil began escaping from the tank onto the Kagens' property. The Kagens had a homeowner's policy with State Farm Insurance Company and State Farm eventually paid them $351,390 for damages to their house caused by the escaping oil.

¶ 3.  In April 2003, State Farm sued Krause, Lembcke, and their respective insurers, Acuity and American Family Mutual Insurance Company, to recover all sums it paid to the Kagens as well as costs, disbursements, and attorney fees. State Farm argued that Krause's negligence caused the oil spill and that Lembcke was liable, under respondeat superior, for that negligence. In February 2004, State Farm amended its complaint to allege that a portion of its settlement with the Kagens went to pay living expenses incurred when the family had to leave its home because of an overwhelming smell or odor of fuel oil in the living areas.

¶ 4.  Acuity responded by requesting a declaratory judgment that its policy with Krause did not cover the kinds of damages sought and, therefore, it had no duty to defend. Krause cross-claimed for contribution or indemnification against Lembcke. West Bend Mutual

---

[2] Lembcke and Krause dispute the nature of this agreement. Lembcke contends he merely agreed to help the Kagens find a way to get rid of the tanks and, for that purpose, provided the Kagens with Krause's name.

Insurance Company, which had a homeowner's policy with Krause and his wife, moved to intervene and to bifurcate the proceedings.[3]

¶ 5.  After a hearing on Acuity's motion for summary judgment, the circuit court issued an oral decision that Acuity's business liability policy with Krause did not provide coverage for the Kagens' claims. The circuit court concluded that Acuity therefore had no duty to defend or indemnify and dismissed the claims against Acuity with prejudice, granting costs and disbursements. A written judgment and order to that effect were filed on May 10, 2004. Krause now appeals.

## Discussion

### Standard of Review

¶ 6.  Whether to grant a declaratory judgment is addressed to the circuit court's discretion. *Bellile v. American Fam. Mut. Ins. Co.*, 2004 WI App 72, ¶ 6, 272 Wis. 2d 324, 679 N.W.2d 827. But when the exercise of that discretion turns on the interpretation of an insurance policy, a question of law, we review the question without deference, applying the same rules of construction we apply to contracts generally. *See id.*; *see also Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶¶ 22–23, 233 Wis. 2d 314, 607 N.W.2d 276.

¶ 7.  In this declaratory judgment action, the question is whether Acuity has a duty to defend or indemnify Krause for damages allegedly caused by his negli-

---

[3] In September 2003, the circuit court agreed to bifurcate coverage issues. At that time, the Kagens intervened to recover uninsured damages allegedly caused by the fuel oil spill.

gent draining and removal of the fuel oil tanks. To determine whether there is a duty to defend, we compare the allegations in the complaint to the relevant portions of the insurance policy. *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364–65, 488 N.W.2d 82 (1992). The insurer has a duty to defend whenever the allegations in the complaint would, if proven, create a "possibility of recovery that falls under the terms and conditions of the insurance policy." *Id.* at 364. If there is any doubt as to the existence of a duty to defend, we resolve that doubt in favor of the insured. *Peace v. Northwestern Nat'l Ins. Co.*, 228 Wis. 2d 106, 153, 596 N.W.2d 429 (1999) (citing *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 266, 593 N.W.2d 445 (1999)).

¶ 8.   A complaint may contain many theories of liability not covered by an insurance policy. *See Shorewood*, 170 Wis. 2d at 366. But if just one theory appears to fall within the policy's coverage, the insurer is obligated to defend the entire action. *See id.* To determine whether coverage exists under a particular policy, we first examine the facts of the insured's claim to ascertain whether the insuring agreement makes an initial grant of coverage. *See American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65. If an initial grant is triggered, we look to see if any exclusions apply. *See Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990). Exclusions are narrowly or strictly construed against the insurer and any ambiguities are resolved in favor of coverage. *See id.*

*Acuity's Basic Liability Agreement*

¶ 9.   Krause's business liability policy, section 1a, begins with the basic liability agreement: "We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance applies." The policy later defines "property damage" as either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." Based on that agreement and the second definition of property damage, Krause claims Acuity has a duty to defend because State Farm's amended complaint alleges loss of use of tangible property—the family home—which was not physically injured.[4] Although we agree the language Krause cites triggers an initial grant of coverage, that initial grant does not create a duty to defend unless coverage survives application of the policy exclusions. *See, e.g., Smith*, 155 Wis. 2d at 811.

*The Pollution Exclusion*

¶ 10.   Krause contends coverage survives because Acuity's pollution exclusion does not unambiguously exclude smells or odors as pollutants. Alternatively, he argues the exclusion does not negate the initial grant of coverage because some of the property damage the Kagens alleged was caused by a non-toxic quality of spilled fuel oil, its smell. We disagree that coverage survives application of the pollution exclusion, but do

---

[4] The Kagens alleged the smell was so bad in areas of the house not directly touched by the oil that they had to move out while it was being cleaned up.

not reach the merits of the first argument because the pollution exclusion operates to deny coverage more directly.

¶ 11. Under 1.f.(1)(a), (1)(d) and (1)(d)(ii) of the Exclusions section of the Acuity business liability policy, neither bodily injury nor property damage are covered if they "arise[] out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants" at any premises on which the insured is "working directly" when the operation involved is testing, monitoring, cleaning up, removing or otherwise treating or responding to the effects of pollutants.[5]

¶ 12. Although the parties disagree whether the pollution exclusion unambiguously excludes smells or odors as pollutants, they agree that fuel oil is a pollutant as defined by the policy. It is also clear that the oil "escaped" or "seeped" or was "discharged" or "dispersed" from the Kagens' tanks while Krause was attempting to remove the oil tanks.[6] Acuity thus contends that because all the property damage alleged by the Kagens "arises out of" the escape, discharge, dispersal, etc., of the oil, those damages are clearly excluded by Krause's business liability policy.

¶ 13. In response, Krause argues that it was not the fuel oil, but rather a non-toxic property of the fuel, its smell, that caused the Kagens to suffer property damage in the form of loss of use. To support that claim, Krause points to *Guenther v. City of Onalaska*, 223 Wis.

---

[5] Krause does not argue that this section of the exclusion, f(1)(d)(ii) is ambiguous.

[6] What these words have in common, as the supreme court has noted, is that all connote a movement from a confined condition to an uncontained condition. *Peace v. Northwestern Nat'l Ins. Co.*, 228 Wis. 2d 106, 126–27, 596 N.W.2d 429 (1999).

2d 206, 588 N.W.2d 375 (Ct. App. 1998), and *Beahm v. Pautsch*, 180 Wis. 2d 574, 510 N.W.2d 702 (Ct. App. 1993), which he claims stand for the proposition that insurers cannot "use the pollution exclusion to avoid damages that are caused by the non-toxic property." We are not persuaded that *Guenther* and *Beahm* stand for that precise proposition, however; nor are we persuaded by Krause's argument.

¶ 14.   The phrase "arising out of" is broad, general, and comprehensive. *See Lawver v. Boling*, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976). It means something more than direct or immediate cause such as originating from, growing out of, or flowing from. *See id.* Here, the lingering odor or smell was the manifestation of the fuel oil's escape that drove the Kagens out of their house, but that smell flowed from an attempt to remove a substance unambiguously excluded from coverage.[7]

¶ 15.   Krause's argument suggests that the policy's apparently clear exclusion for damages "arising out of" a fuel oil spill or escape conflicts with our decisions in *Guenther* and *Beahm*. But *Guenther* and *Beahm* are both legally and factually distinguishable. In those cases, we found the pollution exclusions ambiguous, and therefore looked outside the four corners of the policies to the history of the pollution exclusion. Based on that history, and the link between pollution exclusions and damages relating to the contamination of the environment, *Guenther* concluded that a basement drain backing up was such an ordinary event that a

---

[7] The test for contract construction is not what the insurer intended the words to mean, but what a reasonable person in the position of the insured would have understood them to mean. *See Richland Valley Prods., Inc. v. St. Paul Fire & Cas. Co.*, 201 Wis. 2d 161, 167–68, 548 N.W.2d 127 (Ct. App. 1996).

reasonable person would not have expected the exclusion to apply. *Guenther*, 223 Wis. 2d at 217. In *Beahm*, we considered an arson fire that burned out of control, sending smoke into the road, obstructing passing motorists' vision, and contributing to a multi-car accident. *Beahm*, 180 Wis. 2d at 579. There, too, we found ambiguity, and looked to the history of the pollution exclusion and the linkage between escaping pollutants and contamination damages. *Id.* at 584–85.

¶ 16. In *Guenther*, the pollution involved was sewage, characterized by the court as water and various forms of waste, including fecal matter, in combination. The exclusion defined waste as a pollutant but explicitly did not apply to potable water. *Guenther*, 223 Wis. 2d at 212. We thus concluded that when the basement drain backed up at least some of the damages were caused by water, the liquid aspect of the sewage, and not by the toxicity of fecal matter and other waste. *Id.* at 215. *Beahm* similarly concluded that a reasonable insured would understand a pollution exclusion to exclude coverage only for smoke's character as an "irritant" or "contaminant" as opposed to its capacity to obscure sight.

¶ 17. Both *Beahm* and *Guenther* involved compounds or agents that were composed of pollutant and non-pollutant elements and escapes or dispersals different enough from what a reasonable person might associate with pollution[8] and contamination that we

---

[8] The supreme court used similar logic in a "sick building" case when it determined that pollution exclusion did not unambiguously exclude damages arising from exhaled carbon dioxide. *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 231–32, 564 N.W.2d 728 (1997). Though carbon dioxide was a gas, a listed pollutant in the exclusion, the court found that "the pollution exclusion clause does not plainly and clearly alert a

found the pollution exclusions ambiguous. Here, where the pollutant is fuel oil, an unambiguous pollutant, the substance's toxicity and pollutant character would not be separated by a reasonable person from its smell. Similarly, a fuel oil escape that occurs while an insured is attempting to remove tanks containing the oil is not like the ordinary event of the drain backing up or the extraordinary event of an arson fire because it falls squarely within the activities a reasonable person would associate with contamination and pollution. *Guenther* and *Beahm* are thus not controlling in this case.

¶ 18.   An insured cannot have a reasonable expectation of coverage where an unambiguous policy excludes coverage,[9] and we conclude that a reasonable person in the position of the insured would understand the Acuity business liability policy not to cover damages

---

reasonable insured that coverage is denied for . . . claims that have their genesis in activities as fundamental as human respiration." *Id.* at 232.

[9] *See American States Ins. Co. v. Skrobis Painting & Decorating, Inc.*, 182 Wis. 2d 445, 451, 513 N.W.2d 695 (Ct. App. 1994). *Skrobis* is also informative in another context. Skrobis argued that damages caused by an oil spill did not "arise" from the escape of the pollutants, but rather from the negligent acts of the company's employees. *Id.* at 452–53. We concluded that there is a difference between theories of liability for an occurrence and an occurrence that caused the injury. *Id.* at 453. In an argument analogous to that made by Skrobis, Krause argues that the Kagens' loss of use damages did not "arise" from the spill, but were caused by something separate from the pollutant, the smell of the pollutant. But neither the smell nor the damages alleged are separate from, or could have arisen without, the fuel oil spill.

"arising out of" the dispersal or escape of an unambiguous pollutant such as fuel oil.

*By the Court.*—Judgment affirmed.