**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 28, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1182**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CV25

**IN COURT OF APPEALS
DISTRICT III**

RICHARD W. THOMPSON AND MARGARET A. THOMPSON,

   PLAINTIFFS-APPELLANTS,

 V.

STATE FARM FIRE AND CASUALTY COMPANY, BRADLEY J. JILEK,
SARA D. SLEEUWENHOEK, WILLIAM M. CARROLL, SUSAN M.
CARROLL, LON H. JOHNSON, YVONNE KEMP, DEF INSURANCE
COMPANY, GHI INSURANCE COMPANY, JOHN DOES 1-5, JKL
INSURANCE COMPANY, BLUE CROSS AND BLUE SHIELD OF ILLINOIS
AND MENARD, INC.,

   DEFENDANTS,

WILSON MUTUAL INSURANCE COMPANY,

   DEFENDANT-RESPONDENT.


        APPEAL from an order of the circuit court for Rusk County:
STEVEN P. ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    STARK, P.J.  Richard and Margaret Thompson appeal the circuit court's grant of summary judgment in favor of Wilson Mutual Insurance Company.  The court concluded insurance policies issued by Wilson Mutual did not provide coverage for the Thompsons' claims because the bodily injury underlying those claims did not occur during any of Wilson Mutual's policy periods.  We agree with the court that because the bodily injury in this case occurred after Wilson Mutual's last policy period expired, the Wilson Mutual policies do not cover the Thompsons' claims.  We therefore affirm.

## BACKGROUND

¶2    William and Susan Carroll owned a home in Weyerhauser, Wisconsin, from late 2006 until May 28, 2013.  In April 2007, William built a deck attached to the home.  William built the railings for the deck using a kit he purchased from Menards.  He did not, however, use the screws provided with the kit.

¶3    On May 28, 2013, the Carrolls sold the Weyerhauser home to Lon Johnson and Yvonne Kemp.  Johnson and Kemp subsequently sold the home to Bradley Jilek and Sara Sleeuwenhoek during the summer of 2015.

¶4    On July 16, 2016, the Thompsons were visiting Jilek and Sleeuwenhoek at the Weyerhauser home when one of the deck's railings collapsed, causing Richard Thompson to fall off the deck.  Jilek later testified that he inspected the broken deck railing shortly after Richard's fall and observed that one screw had been ripped out of the railing on each end and one screw had also been snapped in half on each end.

2

¶5      The Thompsons subsequently filed this lawsuit against a number of defendants, including Jilek and Sleeuwenhoek, Johnson and Kemp, the Carrolls, and ABC Insurance Company, a fictitious insurer for the Carrolls. The Thompsons' complaint alleged that Richard's fall was caused by the failure of the deck's railing, which, in turn, was caused by the various defendants' negligence. The Thompsons sought damages for Richard's personal injuries and for Margaret Thompson's loss of society and companionship.

¶6      Wilson Mutual—which had issued the Carrolls homeowners insurance policies for the Weyerhauser home covering the policy periods from August 9, 2006, until August 9, 2013—was later permitted to intervene in the Thompsons' lawsuit. Wilson Mutual then moved for declaratory/summary judgment, arguing its policies did not provide coverage in relation to the Thompsons' claims. Wilson Mutual contended its policies did not provide coverage because the undisputed facts established that the Thompsons' damages were not caused by an "occurrence," as the policies defined that term. Specifically, Wilson Mutual argued the undisputed facts showed that the Thompsons had not sustained "bodily injury" during any of the policy periods covered by the Wilson Mutual policies.

¶7      The circuit court agreed that Wilson Mutual's policies did not cover the Thompsons' claims because the Thompsons had not sustained any bodily injury during Wilson Mutual's policy periods. The court therefore issued an order granting Wilson Mutual's motion for declaratory/summary judgment and dismissing Wilson Mutual from the case. The Thompsons now appeal.

3

**DISCUSSION**

¶8      We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18). "Whether to grant a declaratory judgment is addressed to the circuit court's discretion." *State Farm Fire & Cas. Co. v. Acuity*, 2005 WI App 77, ¶6, 280 Wis. 2d 624, 695 N.W.2d 883. However, when the exercise of that discretion turns on the interpretation of an insurance policy, which is a question of law, we independently review the circuit court's decision. *Id.*

¶9      Our goal in interpreting an insurance policy is to give effect to the parties' intent. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe a policy as it would be understood by a reasonable person in the position of the insured. *Id.* If policy language is unambiguous, we simply enforce it as written. *Marnholtz v. Church Mut. Ins. Co.*, 2012 WI App 53, ¶10, 341 Wis. 2d 478, 815 N.W.2d 708. If policy language is ambiguous—that is, reasonably susceptible to more than one interpretation—we construe it against the insurer and in favor of coverage. *Id.*

¶10     In this case, Wilson Mutual issued multiple homeowners insurance policies to the Carrolls between 2006 and 2013. The parties agree that the relevant policy language is "substantially the same" in each of those policies. As relevant here, the policies state: "**We** pay up to **our limit**, all sums for which an **insured** is liable by law because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies." The policies further state that

4

"bodily injury" means "bodily harm to a person and includes sickness, disease, or death. This also includes required care and loss of services." The term "occurrence," in turn, is defined as "an accident, including repeated exposures to similar conditions, that results in 'bodily injury' or 'property damage' during the policy period."

¶11   Wilson Mutual argues the language quoted in the preceding paragraph unambiguously provides that Wilson Mutual will pay claims for bodily injury only when both the accident and the bodily injury occurred during the policy period. Wilson Mutual contends that in this case, both the accident (Richard Thompson's fall from the deck) and the resulting bodily injury occurred approximately three years after Wilson Mutual's last policy period ended. In contrast, the Thompsons argue the Wilson Mutual policies provide coverage when only the accident, but not the resulting injury, occurred during the policy period. They assert that interpretation is correct because the policies' definition of "bodily injury" "has no temporal limitation and is therefore not limited to bodily injuries within the policy period." The Thompsons further argue that an "accident" occurred in April 2007—during one of Wilson Mutual's policy periods—when William Carroll negligently constructed the deck.

¶12   Both parties rely on *Kremers-Urban Co. v. American Employers Insurance Co.*, 119 Wis. 2d 722, 351 N.W.2d 156 (1984), in support of their positions. *Kremers-Urban* interpreted several different insurance policies that were in effect during different time periods. First, the court addressed policies that were in effect from March 16, 1968, through March 16, 1976. *Id.* at 737. Some of those policies defined "occurrence" as an "accident … which results, during the policy period, in bodily injury." *Id.* Others defined "occurrence" as an "accident … which results in bodily injury," and then defined "bodily injury" as "bodily

5

injury, sickness or disease sustained by any person which occurs during the policy period." *Id.* The *Kremers-Urban* court concluded that under either of those variations, "the 'occurrence' which acts to trigger coverage is tied directly to bodily injury, disease or sickness which result during the policy period." *Id.* The court explained, "A reasonable insured would have understood that, in order for coverage to be invoked under the policies in effect from March 16, 1968, through March 16, 1976, an injury, sickness or disease had to result during that policy period." *Id.*

¶13 The *Kremers-Urban* court reached a different result when analyzing the policy that was in effect from March 16, 1966, through March 16, 1968. That policy defined "occurrence" to mean: "(1) an event, or continuous or repeated exposure to conditions, or (2) an accident, which causes bodily injury or property damage during the policy period, which is neither expected nor intended by the insured." *Id.* at 738-39 (emphasis omitted). The court concluded:

> The plain meaning of these provisions is that the event or accident which causes bodily injury must occur during the policy period. Coverage is predicated not upon the result which might give rise to ultimate liability, but upon the event or accident which occurred during the policy period. Although the event or accident which causes the bodily injury must occur during the policy period, there is no provision that bodily injury must result during that period. The bodily injury need only be caused by an event or accident which allegedly occurred during the policy period, in order that coverage be triggered under the policy in effect between March 16, 1966, and March 16, 1968.

*Id.* at 739.

¶14 The *Kremers-Urban* court expressly rejected the insurer's argument that "for coverage, the time of 'bodily injury or property damage' must be 'during the policy period.'" *Id.* While the insurer had argued that the phrase "during the

policy period" in the definition of "occurrence" modified the term "bodily injury," the court concluded a reasonable insured "would understand that the phrase, 'during the policy period,' modifies when the occurrence (event or accident) must take place in order that coverage under the policy be invoked." *Id.* at 739-40. Thus, "[t]he event or accident which causes the bodily injury must happen during the policy period. There is no indication when the bodily injury must result—only that the event or accident which caused the bodily injury or property damage must happen during the policy period." *Id.* at 740.

¶15    The definition of "occurrence" in Wilson Mutual's policies is similar to the definition found in the 1966-68 policy in ***Kremers-Urban***. That policy defined an occurrence, in relevant part, as "an accident, which causes bodily injury or property damage during the policy period." *Id.* at 739 (emphasis omitted). Here, Wilson Mutual's policies define an occurrence as "an accident, including repeated exposures to similar conditions, that results in 'bodily injury' or 'property damage' during the policy period." Given our supreme court's interpretation of the 1966-68 policy in ***Kremers-Urban***, we agree with the Thompsons that the

Wilson Mutual policies appear—at first blush—to cover claims where only the accident, but not the resulting bodily injury, occurred during the policy period.[1]

¶16     The policies at issue here are distinguishable from the 1966-68 policy in *Kremers-Urban*, however, because they contain additional language clarifying that they cover only bodily injury that occurred during the policy period. Specifically, under the heading "Policy Conditions," the Wilson Mutual policies contain a condition entitled "Policy Period" that states: "This policy only covers losses, 'bodily injury', and 'property damage' that occur during the policy period." After reading the "Policy Period" condition, no reasonable insured could conclude that the Wilson Mutual policies would cover bodily injury that occurred outside the policy period. Instead, the condition unambiguously limits Wilson Mutual's coverage to bodily injury that occurred during the policy period. Here, it is undisputed that Richard Thompson's bodily injury occurred approximately three

---

[1] We question the validity of the supreme court's interpretation of the 1966-68 policy in *Kremers-Urban Co. v. American Employers Insurance Co.*, 119 Wis. 2d 722, 351 N.W.2d 156 (1984). The definition of "occurrence" in that policy contained two separate, numbered items: "(1) an event, or continuous or repeated exposure to conditions" and "(2) an accident, which causes bodily injury or property damage during the policy period, which is neither expected nor intended by the insured." *Id.* at 739 (emphasis omitted). The second numbered item contained the nonrestrictive relative clause "which causes bodily injury or property damage during the policy period." *Id.* (emphasis omitted). Our supreme concluded the modifier "during the policy period" in that nonrestrictive relative clause applied not to the two terms within the clause—i.e., "bodily injury" and "property damage"—but to a term outside the clause—i.e., "accident." *Id.* at 740. Moreover, the court concluded the modifier "during the policy period" also applied to the term "event," which was in the first numbered item of the "occurrence" definition, rather than the second. *Id.* We cannot agree with the supreme court that a "reasonable insured" would read the definition of "occurrence" in the 1966-68 policy in this manner. Nevertheless, *Kremers-Urban* is binding authority, and we are therefore not free to disregard it. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

years after Wilson Mutual's last policy period expired. As such, the Wilson Mutual policies do not provide coverage for the Thompsons' claims.[2]

¶17 In the alternative, the Thompsons argue the circuit court erred by granting Wilson Mutual summary judgment because there is an unresolved factual issue as to whether "property damage" occurred during the policy period. Again, the Wilson Mutual policies define an "occurrence" as "an accident … that results in 'bodily injury' *or 'property damage'* during the policy period." (Emphasis added.) The Thompsons argue William Carroll's allegedly negligent construction of the deck in 2007 was an accident, and they further contend that accident caused property damage because it is undisputed "that the screws and deck railing supports" were damaged at some point in time. Because the date when that damage occurred has not yet been determined, the Thompsons argue the court should have denied Wilson Mutual's summary judgment motion and allowed discovery on the issue of when the property damage took place.

¶18 This argument is nearly frivolous. Even assuming that the negligent construction of the deck qualified as an "accident," for purposes of the policies' definition of "occurrence," the Thompsons have not asserted a claim for property damage in this case. Instead, they have only sought to recover damages caused by Richard Thompson's bodily injury, which indisputably occurred after the last of Wilson Mutual's policy periods expired. Moreover, the Thompsons would not

---

[2] The Thompsons argue the "Policy Period" condition in the Wilson Mutual policies—when read in conjunction with the policies' definition of "occurrence"—creates an ambiguity as to whether the policies cover bodily injury that occurred outside the policy period. We disagree. The condition does not render the policies ambiguous; instead, it clarifies that only bodily injury that occurred during the policy period is covered. Again, after reading the "Policy Period" condition, a rational insured could not reasonably expect to be covered for bodily injury that occurred outside the policy period.

have standing to assert a claim for any property damage caused by the allegedly negligent construction of the deck, as it is undisputed they have never owned or had any interest in the Weyerhauser home.

¶19     The Thompsons rely heavily on *Eljer Manufacturing, Inc. v. Liberty Mutual Insurance Co.*, 972 F.2d 805 (7th Cir. 1992), in support of their assertion that "property damage" occurred in this case, thus giving rise to coverage.  In *Eljer*, the Seventh Circuit considered the following question: "If a manufacturer sells a defective product or component for installation in the real or personal property of the buyer, but the defect does not cause any tangible change in the buyer's property until years later, can the installation itself nonetheless be considered a 'physical injury' to that property?" *Id.* at 807.  Applying Illinois law, the Seventh Circuit determined, as a matter of first impression, "that the incorporation of a defective product into another product inflicts physical injury in the relevant sense on the latter at the moment of incorporation." *Id.* at 814.

¶20     There are at least four problems with the Thompsons' reliance on *Eljer*.  First, while *Eljer* addressed what type of injury qualifies as "physical injury" for purposes of an insurance policy's definition of property damage, as explained above, in this case the Thompsons have not asserted—and could not assert—a property damage claim.  Second, while *Eljer* held that "physical injury" to property occurs at the moment a defective product is incorporated into that property, the Thompsons have not alleged that any property damage here was caused by the incorporation of a defective product into the Weyerhauser home. Third, the Illinois Supreme Court ultimately concluded that *Eljer* was "incorrectly decided under Illinois law." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 497 (Ill. 2001); *see also* *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 25 (Tex. 2015).  Fourth, the Thompsons do not cite any Wisconsin

case that has adopted *Eljer*'s holding. The Thompsons' reliance on *Eljer* is therefore misplaced.

¶21    The Thompsons argue our interpretation of the Wilson Mutual policies—i.e., that they provide coverage only for bodily injury that occurred during the policy period—is absurd because it transforms the policies from occurrence policies into claims-made policies. An "occurrence policy" is generally defined as "[a]n insurance policy to indemnify for any loss from an event that occurs within the policy period, regardless of when the claim is made." *Occurrence policy*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Anderson v. Aul*, 2015 WI 19, ¶23, 361 Wis. 2d 63, 862 N.W.2d 304. A claims-made policy, on the other hand, is a policy "that indemnifies against all claims made during a specified period, regardless of when the incidents that gave rise to the claims occurred." *Claims-made insurance*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Anderson*, 361 Wis. 2d 63, ¶25.

¶22    Our interpretation does not transform the Wilson Mutual policies into claims-made policies. Our holding that the policies do not provide coverage for claims alleging bodily injury that occurred outside the policy period is not tantamount to a holding that the policies cover only claims made during the policy period. Under our analysis, when a claim was made is immaterial to a determination of whether that claim is covered. What matters instead is whether the claim seeks to recover for bodily injury that occurred during the policy period.

¶23    The Thompsons also argue that our interpretation of the Wilson Mutual policies will lead to absurd results. In support of this argument, they offer the following hypothetical:

11

Consider a homeowner that has lived at the same insured premises for 20 years. For each year, the homeowner purchased a policy of general liability insurance with Wilson [Mutual] that is identical to the Policy purchased by the Carrolls and for each year the policy period ran from January 1 until December 31 of that year. Assume that the insured negligently constructed a deck, staircase, or other structure at the insured premises on December 31. That same day, a friend of the homeowner falls through the floorboards of the deck, staircase, or other structure because the insured failed to use the correct screw to secure the floorboards. One day later, on January 1 and at the beginning of a new policy period, a second friend does the same thing on a different part of the deck, staircase, or other structure. Despite having continuous insurance for years on the insured premises, [Wilson Mutual's] interpretation of the Policy is that the homeowner is uninsured for the second friend's injuries because the occurrence and the injury took place during two different policy periods.

¶24 There is nothing absurd about the Thompsons' hypothetical. Their hypothetical sets forth two separate claims, each of which must be analyzed pursuant to the policy language that was in effect at the time the claim took place. Moreover, we are not convinced that our interpretation of the Wilson Mutual policies would lead to the result the Thompsons claim. Rather, under our interpretation, the first friend's injuries would be covered under the policy whose coverage ended on December 31 because an accident causing bodily injury—i.e., the first friend's fall—took place during the policy period on December 31. The second friend's injuries would be covered under the policy whose coverage began on January 1 because an accident causing bodily injury—i.e., the second friend's fall—took place during the policy period on January 1. Thus, although the Thompsons are correct that we avoid interpreting insurance policies in ways that would produce absurd results, *see* ***Kopp v. Home Mut. Ins. Co.***, 6 Wis. 2d 53, 57, 94 N.W.2d 224 (1959), they have not shown that our interpretation in this case produces any absurdity.

12

¶25 In summary, we conclude the Wilson Mutual policies unambiguously state that they do not provide coverage for bodily injury that occurred outside the policy period. Here, the bodily injury underlying the Thompsons' claims occurred approximately three years after Wilson Mutual's last policy period expired. Under these circumstances, the Wilson Mutual policies do not provide coverage for the Thompsons' claims. Accordingly, the circuit court properly granted Wilson Mutual summary judgment.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.