# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2020AP1943

†Petition for Review Filed

Complete Title of Case:

**LINDSEY DOSTAL, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF HAEVEN DOSTAL,**

**†PLAINTIFF-APPELLANT-CROSS-RESPONDENT,**

**V.**

**CURTIS STRAND AND ABC INSURANCE COMPANY,**

**DEFENDANTS,**

**STATE FARM FIRE AND CASUALTY COMPANY,**

**INTERVENING-DEFENDANT-RESPONDENT-CROSS-APPELLANT.**

---

| | |
|---|---|
| Opinion Filed: | October 19, 2021 |
| Submitted on Briefs: | August 10, 2021 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

---

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Mackenzie E. Campbell* and *Michael J. Brose* of *Doar, Drill & Skow, S.C.*, New Richmond. |
| Respondent ATTORNEYS: | On behalf of the intervening-defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Casey B. Suszynski, Maya H. Digre*, and *William L. Moran* of *HKM, P.A.*, St. Paul, MN. |

COURT OF APPEALS
DECISION
DATED AND FILED

October 19, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1943**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV217**

**IN COURT OF APPEALS**

---

LINDSEY DOSTAL, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR
OF THE ESTATE OF HAEVEN DOSTAL,

    PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

  V.

CURTIS STRAND AND ABC INSURANCE COMPANY,

    DEFENDANTS,

STATE FARM FIRE AND CASUALTY COMPANY,

    INTERVENING-DEFENDANT-RESPONDENT-CROSS-APPELLANT.

---

       APPEAL and CROSS-APPEAL from a judgment of the circuit court for Barron County: JAMES C. BABLER, Judge. *Affirmed*.

       Before Stark, P.J., Hruz and Gill, JJ.

¶1     GILL, J.  Lindsey Dostal (hereinafter, "Dostal") appeals a circuit court's grant of summary and declaratory judgment to State Farm Fire and Casualty Company (hereinafter, "State Farm").  The court concluded that State Farm did not provide coverage under Curtis Strand's homeowner's insurance policy (hereinafter, "the Policy") for Dostal's claims against Strand resulting from the death of Dostal and Strand's infant daughter, Haeven Dostal (hereinafter, "Haeven") while she was in Strand's care.  The court determined Haeven's death was not the result of an occurrence, which is defined in the Policy as "an accident, including exposure to conditions" that results in bodily injury or property damage during the policy period.  In particular, the court concluded that Strand's criminal conviction of second-degree reckless homicide for causing Haeven's death precluded Dostal's claim that Strand's actions were accidental because criminal recklessness requires more than accidental conduct.  It reached this conclusion because, to find Strand guilty of that crime, the jury had to find that Strand created an unreasonable and substantial risk of great bodily harm to Haeven and that he acted with awareness of that risk.

¶2     Dostal argues that the Policy provides coverage for Haeven's bodily injury and death because they resulted from an accident; at a minimum, she contends there are genuine issues of fact in that regard.  Dostal asserts that the circuit court erred by failing to consider disputed facts regarding the injury-causing event that led to Haeven's death.  She further asserts that the court's holding is in error because it equates conduct where there is an awareness of a risk of harm with conduct that intentionally causes harm.  Dostal contends that awareness of a risk of harm, by itself, does not mean that an injury-causing event cannot be an accident.

¶3     Under the undisputed facts of this case, we conclude that the Policy did not provide coverage for Dostal's claims.  A jury in a criminal trial rejected the argument that Strand's actions were accidental and convicted him of second-degree

2

reckless homicide. In doing so, the jury necessarily found, beyond a reasonable doubt, that Strand was aware that his conduct created an unreasonable and substantial risk of harm to Haeven such that her death did not result from an accident. Accordingly, Strand's conduct did not constitute an occurrence under the Policy. Because we conclude there was no occurrence, the Policy provides no coverage for Dostal's claim against Strand. Accordingly, we affirm.[1]

## BACKGROUND

¶4 Dostal and Strand dated on and off for approximately seventeen years, during which time Dostal became pregnant. After being advised of the pregnancy, Strand told Dostal he did not want to be a father and that Dostal should have an abortion. Notwithstanding Strand's objections, Dostal continued the pregnancy. Prior to the child's birth, Dostal and Strand signed a document whereby Strand essentially relinquished all rights and responsibility for the child. They agreed that Dostal would have sole custody and physical placement of their unborn child, and sole power to make all decisions regarding the child's schooling, residence, and healthcare. In addition, it was understood that Strand would have no contact with the child and would pay no support for her.

¶5 Haeven was born on April 3, 2017. Because Haeven was enrolled in insurance benefits through the State of Wisconsin, the State sought reimbursement for Haeven's medical expenses from Strand. Shortly thereafter, the parties' written

---

[1] Dostal also argues the circuit court erred in holding that because Strand was convicted of second-degree reckless homicide, the Policy's intentional acts exclusion precluded coverage for Dostal's claims. In addition, in a cross-appeal, State Farm argues that the court erred in denying summary judgment on the alternative ground that the resident relative exclusion precluded coverage. We decline to decide these issues because we affirm on other grounds. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

agreement was rejected by the State. A child support agency initiated a paternity/child support action to establish Strand's paternity and his obligation to provide support for Haeven.

¶6 Strand was subsequently formally adjudicated Haeven's father. The circuit court ordered that the parties share joint legal custody of Haeven, and Dostal was granted primary physical placement. Strand was granted minimal temporary physical placement and was ordered to pay child support.

¶7 On July 11, 2017, while in Strand's care, Haeven died after sustaining a skull fracture and an associated brain injury. As part of the subsequent investigation, Strand provided law enforcement with different versions of the events that led up to Haeven's death. In each of Strand's recitations, he stated that Haeven was involved in a fall. The medical examiner, however, determined that Strand's explanations of the events occurring prior to Haeven's death were inconsistent with the severity of her injuries. Ultimately, the medical examiner concluded that Haeven's death was caused by anoxic encephalopathy following resuscitated cardiac arrest due to blunt force trauma.

¶8 Strand was charged with first-degree reckless homicide and obstructing an officer. Following a jury trial, Strand was convicted of second-degree reckless homicide and obstructing an officer.

¶9 Thereafter, Dostal commenced this civil lawsuit against Strand and his insurer,[2] alleging that Haeven's "injuries were proximately caused by the negligent acts of [Strand], including, but not limited to negligent supervision, failing

---

[2] The complaint named ABC Insurance Company as a placeholder defendant. State Farm ultimately intervened as the proper insurer.

4

to properly hold or secure Haeven to prevent her from falling, [and] failing to contact emergency services in a reasonable manner." Dostal also asserted a claim for wrongful death, alleging that she had sustained damages and loss of society and companionship as a result of Haeven's death. Strand tendered this matter to State Farm seeking defense and indemnification under the Policy. Thereafter, State Farm moved to intervene and to bifurcate the issue of insurance coverage and stay proceedings on Strand's liability until coverage was determined.

¶10 Strand's policy with State Farm provides, in part:

SECTION II – LIABILITY COVERAGES

COVERAGE[] – PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

¶11 The Policy defines "occurrence" as "an accident, including exposure to conditions, which results in (a) bodily injury; or (b) property damage; during the policy period." (Formatting and emphasis altered.) The Policy also contains an intentional acts exclusion, which excludes coverage for "**bodily injury** … which is either expected or intended by the **insured**."

¶12 State Farm filed a motion for summary and/or declaratory judgment, arguing, in part, that there was no coverage for Dostal's claims because there was

no occurrence under the terms of the Policy. State Farm further argued that even if there was an occurrence, there was no coverage for the claims under the resident relative and intentional acts exclusions of the Policy. The circuit court granted State Farm's motion, concluding in pertinent part:

> As a matter of law[,] the conviction of second[-]degree reckless homicide prevents the events from being an "occurrence" due to the fact that the Jury had to find beyond a reasonable doubt that Strand recklessly caused the death of another human being by creating an unreasonable and substantial risk [of] great bodily harm and death and that Strand acted with awareness of that risk.

The court further concluded that the intentional acts exclusion barred coverage because Strand's intent could be inferred as a matter of law. Dostal now appeals.

## DISCUSSION

¶13    We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2019-20).[3] Whether to grant or deny a declaratory judgment is within the discretion of the circuit court. *Jones v. Secura Ins. Co.*, 2002 WI 11, ¶19, 249 Wis. 2d 623, 638 N.W.2d 575. When the exercise of that discretion turns on the interpretation of an insurance policy, which is a question of law, we independently review the circuit court's decision. *State Farm Fire & Cas. Co. v. Acuity*, 2005 WI App 77, ¶6, 280 Wis. 2d 624, 695 N.W.2d 883.

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶14 Our goal in interpreting an insurance policy is to give effect to the parties' intent. *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe a policy as it would be understood by a reasonable person in the position of the insured. *Id.* If policy language is unambiguous, we enforce the policy as written; however, if it is ambiguous—that is, reasonably susceptible to more than one interpretation—we construe it against the insurer and in favor of coverage. *Marnholtz v. Church Mut. Ins. Co.*, 2012 WI App 53, ¶10, 341 Wis. 2d 478, 815 N.W.2d 708.

¶15 The circuit court concluded that Strand's conduct in relation to Haeven's death could not be an occurrence under the Policy because his conduct was not accidental. The court concluded as such because a jury had already found Strand guilty of second-degree reckless homicide under WIS. STAT. § 940.06 for causing Haeven's death, which required the jury to believe, beyond a reasonable doubt, both that Strand recklessly caused Haeven's death by creating an unreasonable and substantial risk of great bodily harm and death, and that he acted with awareness of that risk.

¶16 Dostal asserts that the circuit court erred by focusing exclusively on the criminal jury instruction and failed to consider all of the facts in the record regarding the injury-causing event—a fall, which she asserts was an accident and thus an occurrence. Dostal further contends that the "effect of the decision is a rule that criminal recklessness and accidental conduct cannot exist at the same time for purposes of insurance coverage."

¶17 Dostal argues that material disputed facts regarding the injury-causing event are present here, and that the circuit court therefore erred in granting State Farm's summary judgment motion. The only version of events heard during

Strand's criminal trial regarding how Haeven was injured was from Strand's recorded interview, wherein Strand stated that Haeven's injuries resulted from a fall. Strand told police that Haeven fell off his knee while he was trying to feed her. Alternatively, Strand stated that he dropped Haeven while trying to warm up her bottle. The forensic pathologists provided their opinions on the veracity of Strand's statements; however, they never provided an alternative theory as to how the incident happened. Dostal asserts that Strand's explanation that Haeven's injuries resulted from a fall could support the conclusion that Haeven's death was an accident. Dostal thus argues that this disputed issue of material fact prevented the court's grant of summary judgment.

¶18    Dostal contends that *Estate of Sustache v. American Family Mutual Insurance Co.*, 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845, and *Talley v. Mustafa*, 2018 WI 47, 381 Wis. 2d 393, 911 N.W.2d 55, provide the proper analysis that a circuit court is required to conduct in these types of cases. In *Sustache*, Sustache was punched by a guest at an underage drinking party, which caused him to fall to the curb and sustain severe injuries that ultimately led to his death. *Sustache*, 311 Wis. 2d 548, ¶5. In assessing whether Sustache's injuries were the result of an occurrence, our supreme court focused on the definition of an "accident," which is an "event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; rather, it is the causal event that must be accidental for the event to be an accidental occurrence." *Id.*, ¶46 (citation omitted). After reviewing the affidavits, the allegations contained in the complaint and the policy, the court determined that the policy at issue did not provide coverage for the claims because the injury-causing actions were not accidental and thus did not give rise to an occurrence. *Id.*, ¶¶4, 56.

8

¶19 *Talley* involved negligent supervision claims arising out of an employee punching a customer in the face, and it focused on "what is the injury-causing event." *Talley*, 381 Wis. 2d 393, ¶17 (citation omitted). After comparing the complaint and extrinsic evidence obtained through discovery to the language of the policy, the court determined that there was no coverage because one cannot "accidentally" intentionally punch someone in the face. *Id.*, ¶¶26, 37.

¶20 Dostal's reliance on *Sustache* and *Talley* is misplaced. Dostal argues that in accordance with *Sustache* and *Talley*, the circuit court must review the record to see if there are any disputed facts regarding the injury-causing event, and if there are, summary judgment should be denied. Unlike in the present case, neither of the aforementioned cases had a criminal adjudication against which to review the facts. As a result, the courts in those cases had to rely primarily on the plaintiffs' complaints. The jurors in Strand's criminal case, by contrast, heard the testimony of witnesses, weighed the credibility of those witnesses, considered the jury instructions, and then convicted Strand of second-degree reckless homicide. As part of the jury instructions, the court was explicit as to what constitutes criminally reckless conduct in Wisconsin:

> Criminally reckless conduct is defined as conduct that creates a risk of death or great bodily harm to another person, and the risk of death or great bodily harm was unreasonable and substantial, and that the defendant was aware that his conduct created an unreasonable and substantial risk of death or great bodily harm.
>
> The defendant, Mr. Strand, contends that he was not aware that his conduct created an unreasonable and substantial risk of death or great bodily harm, but that what happened was an accident.
>
> If [Strand] did not act with an awareness required for this crime, he is not guilty of this crime.

¶21    After receiving these instructions, the jury deliberated and found Strand guilty, beyond a reasonable doubt, of second-degree reckless homicide. As noted, the circuit court had instructed the jurors that given Strand's argument that his actions were an "accident," their charge was to find him not guilty if he did not possess the required awareness of the unreasonable and substantial risk of death or great bodily harm to Haeven that he had created. By finding him guilty, the jury necessarily concluded that Strand was aware that his conduct created an unreasonable and substantial risk of death or great bodily harm and, therefore, his conduct was not an "accident."

¶22    Intertwined with the foregoing considerations, Dostal further asserts that the circuit court's holding is in error because it equates conduct where there is an awareness of an unreasonable and substantial risk of harm with intentional conduct. According to Dostal, "[a]wareness of risk of harm, by itself, does not mean an injury causing event cannot be an accident." She contends that a fall can be an accident even when there is an awareness of significant risk.

¶23    We do not disagree with Dostal insofar as we conclude that not all reckless conduct will reach the level of criminal recklessness. Such lesser "reckless" conduct, although more dangerous than merely negligent acts, still may require fact finding as to whether a resulting injury was accidental. However, when a jury has found an individual's conduct to be criminally reckless—which requires a finding that the individual was aware that his or her conduct created an unreasonable and substantial risk of death or great bodily harm—it is axiomatic that no accident occurred.

¶24    Citing case law from other jurisdictions, Dostal argues that for insurance coverage purposes, reckless conduct involves a different degree of

10

volition than intentional conduct and should not be categorically excluded from the ambit of insurance coverage. Dostal asserts that if "State Farm wanted to exclude coverage for criminal or reckless conduct, it easily could have. It made specific exclusions for intentional conduct and could have inserted a similar exclusion for reckless conduct." She further asserts a reasonable jury would conclude that Strand's conduct, even if reckless, was an accident and constituted an occurrence. She therefore contends that the circuit court erred in granting State Farm's motion.

¶25 Dostal's arguments in this regard misapprehend the insurance policy language at play. Whether a plaintiff's injuries arose from an occurrence and whether the insured engaged in intentional conduct are separate and distinct analyses. In particular, the "occurrence" analysis asks in the first instance whether the injury-causing event was accidental, while the "intentional act" analysis asks if the insured expected or intended the injury. Wisconsin's criminal code recognizes a degree of mens rea separate from accidental and intentional that is highly relevant to this case—recklessness. *See* WIS. STAT. §§ 939.23–939.25.

¶26 Wisconsin courts have long held that contracts must be interpreted "to give 'reasonable meaning to each provision and without rendering any portion superfluous.'" *Sonday v. Dave Kohel Agency, Inc.*, 2006 WI 92, ¶21, 293 Wis. 2d 458, 718 N.W.2d 631 (citation omitted). Interpretations which render insurance contract language superfluous are to be avoided where a construction can be given which lends meaning to the phrase. *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 263, 371 N.W.2d 392 (Ct. App. 1985). Merging the "occurrence" analysis with the "intentional act" analysis destroys this separation, violates principles of contract interpretation, and is incorrect as a matter of law.

11

¶27 As stated above, Wisconsin courts have interpreted the term "accident" to mean "an event which takes place without one's foresight or expectation." *American Girl*, 268 Wis. 2d 16, ¶37. Furthermore, "[a] result, though unexpected, is not an accident; the means or cause must be accidental." *Id.* Here, the circuit court correctly determined that no reasonable jury could find Haeven's injuries and death resulted from an accident. The court ruled, as a matter of law, that Strand's conviction for second-degree reckless homicide prevented the events resulting in bodily injury to Haeven from being an occurrence. In reaching that decision, the court considered the criminal jury instructions, which defined criminally reckless conduct as that which "creates a risk of death or great bodily harm to another person, and the risk of death or great bodily harm was unreasonable and substantial, and that the defendant was aware that his conduct created an unreasonable and substantial risk of death or great bodily harm." With these jury instructions as a backdrop, the jury found that the State had proved, beyond a reasonable doubt, that Strand "recklessly cause[d] the death of another human being" by "creat[ing] an unreasonable and substantial risk of death or great bodily harm." *See* WIS. STAT. §§ 940.06(1) and 939.24(1). Importantly, the jury also found that Strand acted with "aware[ness] of that risk," *see* § 939.24(1), and in doing so, it necessarily rejected his claim that Haeven's death was an accident.

¶28 Accordingly, we conclude that the circuit court properly determined the Policy provided no coverage for Dostal's claims because Haeven's bodily injuries and death did not result from an occurrence. The court properly granted State Farm's motion for summary and declaratory judgment.

*By the Court.*—Judgment affirmed.