# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1943 |

| | |
|---|---|
| COMPLETE TITLE: | Lindsey Dostal, Individually and as Special Administrator of the Estate of Haeven Dostal, |
| | Plaintiff-Appellant-Cross-Respondent-Petitioner, |
| | v. |
| | Curtis Strand and ABC Insurance Company, |
| | Defendants, |
| | State Farm Fire and Casualty Company, |
| | Intervening-Defendant-Respondent-Cross-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d 781, 967 N.W.2d 157
PDC No: 2021 WI App 79 - Published

| | |
|---|---|
| OPINION FILED: | January 26, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 6, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Barron |
| JUDGE: | James C. Babler |

JUSTICES:
ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion, in which ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant-cross-respondent-petitioner, there were briefs filed by *Michael J. Brose, Mackenzie E. Campbell, Morgan A. Richie,* and *Doar, Drill & Skow, S.C.,* New Richmond. There was an oral argument by *Mackenzie E. Campbell.*

For the intervening-defendant-respondent-cross-appellant, there was a brief filed by *William L. Moran, Maya H. Digre,* and *HAWS-KM, P.A.,* St. Paul. There was an oral argument by *William L. Moran.*

An amicus curiae brief was filed by *Michael J. Cerjak* and *Cannon & Dunphy, S.C.,* Brookfield, for Wisconsin Association for Justice.

2023 WI 6

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2020AP1943
(L.C. No. 2019CV217)

STATE OF WISCONSIN  :  IN SUPREME COURT

**Lindsey Dostal, Individually and as Special Administrator of the Estate of Haeven Dostal,**

**Plaintiff-Appellant-Cross-Respondent-Petitioner,**

**v.**

**Curtis Strand and ABC Insurance Company,**

**Defendants,**

**State Farm Fire and Casualty Company,**

**Intervening-Defendant-Respondent-Cross-Appellant.**

**FILED**

**JAN 26, 2023**

Sheila T. Reiff
Clerk of Supreme Court

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion, in which ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1   ANN WALSH BRADLEY, J.   The petitioner, Lindsey Dostal (Dostal), both individually and as special administrator of the

estate of Haeven Dostal, seeks review of a court of appeals decision affirming the circuit court's grant of summary and declaratory judgment in favor of State Farm.[1] The court of appeals determined that Curtis Strand's conduct did not constitute an "occurrence" covered by the State Farm policy at issue because his conviction for second-degree reckless homicide established that the death was not the result of an accident.

¶2 Dostal contends that Strand's criminal conviction does not preclude a finding that Haeven's death was the result of an accident. She further advances that the State Farm policy provides coverage for her claims against Strand and that neither the resident relative nor the intentional acts exclusion bars coverage.

¶3 In contrast, State Farm asserts that issue preclusion bars relitigation of the issue of whether Haeven's death was the result of an accident. It argues that Strand's criminal conviction is dispositive on the issue of available insurance coverage under Strand's policy, and that there is no coverage for Dostal's claims. State Farm further contends that the policy's resident relative and intentional acts exclusions preclude coverage.

¶4 We conclude that issue preclusion does not bar Dostal from seeking insurance coverage for her claims against Strand. The issue of whether Strand's conduct constituted an "accident"

---

[1] Dostal v. Strand, 2021 WI App 79, 399 Wis. 2d 781, 967 N.W.2d 157 (affirming order of the circuit court for Barron County, James C. Babler, Judge).

was not actually litigated in the prior criminal proceeding. Additionally, we conclude that there are genuine issues of material fact regarding the application of the resident relative and intentional acts exclusions such that summary judgment is inappropriate.

¶5    Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for further proceedings consistent with this opinion.

I

¶6    The following facts are undisputed. Additional facts will be set forth as necessary in our analysis.

¶7    Dostal and Strand were in an on-and-off relationship for 17 years. Dostal gave birth to Haeven on April 3, 2017, and Strand was subsequently adjudicated the father.

¶8    On July 11, 2017, Haeven passed away as a result of head trauma that occurred while she was in Strand's care. Law enforcement conducted an investigation into Haeven's death.

¶9    As part of the investigation, law enforcement spoke with Strand multiple times, during which Strand gave inconsistent accounts of what happened. In a statement given to police on July 10, 2017, Strand said that Haeven fell off of his knee and hit the floor as he attempted to burp her. Strand was interviewed again in November of 2017, at which time he stated that he was warming a bottle, turned around and hit the kitchen island, dropping Haeven to the floor. In both versions of events, Strand put Haeven to bed without seeking medical attention.

¶10 The State initially charged Strand with first-degree reckless homicide[2] and resisting or obstructing an officer.[3] After a jury trial, at which Dostal was a witness, the jury convicted Strand of second-degree reckless homicide[4] and resisting or obstructing an officer.

¶11 Dostal subsequently brought this civil action for negligence and wrongful death against Strand. With regard to the negligence claim, the complaint alleges that Haeven's "injuries were proximately caused by the negligent acts of . . . Strand, including but not limited to, negligent supervision, failing to properly hold or secure Haeven to prevent her from falling, [and] failing to contact emergency services in a reasonable manner." As to the wrongful death claim, Dostal alleged that she "has sustained damages due to the wrongful death of her daughter, loss of the society and companionship of her child, and has suffered pecuniary loss and will continue to suffer those losses into the future."

¶12 Strand tendered the matter to State Farm, his homeowner's insurer, seeking defense and indemnification. State Farm moved to intervene, bifurcate liability and coverage

---

[2] Wis. Stat. § 940.02(1) (2017-18).

All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[3] Wis. Stat. § 946.41(1).

[4] Wis. Stat. § 940.06(1).

proceedings, and stay liability proceedings.[5] The circuit court granted State Farm's motion and went ahead with coverage proceedings.

¶13 State Farm moved for summary and declaratory judgment, arguing that its policy did not provide coverage for Dostal's claims and that it thus had no duty to defend or indemnify Strand. Specifically, State Farm asserted that there was no "occurrence" (defined as an "accident") triggering coverage. In State Farm's view, the fact that Strand was convicted of second-degree reckless homicide, which required that the jury find that Strand created an unreasonable and substantial risk of death or great bodily harm and that he was aware of that risk, precluded the events at issue "from being labeled a mere 'accident.'" State Farm additionally argued that even if there were an "occurrence," coverage remains precluded under a "resident relative" exclusion and an "intentional acts" exclusion.

¶14 The circuit court agreed with State Farm and granted its motion for summary and declaratory judgment. It concluded that "[t]he criminal recklessness in this case requires more than accidental conduct." With regard to the resident relative exclusion, the circuit court determined that "[t]here are

---

[5] See Newhouse by Skow v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 836, 501 N.W.2d 1 (1993) (explaining that "the proper procedure for an insurance company to follow when coverage is disputed is to request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved"); Elliott v. Donahue, 169 Wis. 2d 310, 318, 485 N.W.2d 403 (1992).

disputed material facts as to whether or not Haeven was a resident under the State Farm policy." Finally, as to the intentional acts exclusion, the circuit court concluded that this exclusion "also operates to bar coverage in this case because Strand's intent can be inferred as a matter of law."

¶15 Dostal appealed the circuit court's grant of summary judgment and declaratory judgment in favor of State Farm. Additionally, State Farm cross-appealed from the portion of the circuit court's decision finding disputed issues of material fact as to the application of the resident relative exclusion.

¶16 The court of appeals affirmed the circuit court's decision in a published opinion. Dostal v. Strand, 2021 WI App 79, 399 Wis. 2d 781, 967 N.W.2d 157. Its analysis mirrored that of the circuit court. Namely, the court of appeals determined:

> Under the undisputed facts of this case, we conclude that the Policy did not provide coverage for Dostal's claims. A jury in a criminal trial rejected the argument that Strand's actions were accidental and convicted him of second-degree reckless homicide. In doing so, the jury necessarily found, beyond a reasonable doubt, that Strand was aware that his conduct created an unreasonable and substantial risk of harm to Haeven such that her death did not result from an accident. Accordingly, Strand's conduct did not constitute an occurrence under the Policy. Because we conclude there was no occurrence, the Policy provides no coverage for Dostal's claim against Strand.

Id., ¶3. Because the court of appeals concluded that there was no occurrence, it declined to address the resident relative and intentional acts exclusions. Id., ¶3 n.1. Dostal petitioned for this court's review.

6

II

¶17 We are called upon to review the court of appeals' determination that the circuit court properly granted summary and declaratory judgment to State Farm. We review a summary judgment determination independently of the determinations rendered by the circuit court and court of appeals, applying the same methodology as the circuit court. MacLeish v. Boardman & Clark LLP, 2019 WI 31, ¶22, 386 Wis. 2d 50, 924 N.W.2d 799. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

¶18 The grant or denial of declaratory judgment is addressed to the circuit court's discretion, but when the exercise of such discretion turns on a question of law, we likewise review the question independently of the circuit court and court of appeals' determinations. Olson v. Farrar, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. Where the circuit court's grant of declaratory judgment turns upon its interpretation of an insurance policy, a question of law is presented. Id.

¶19 In our review, we examine whether issue preclusion applies. "Whether issue preclusion is a potential limit on litigation in an individual case is a question of law, on which we give no deference to the circuit court's decision." Mrozek v. Intra Fin. Corp., 2005 WI 73, ¶15, 281 Wis. 2d 448, 699 N.W.2d 54.

7

¶20 Finally, our review requires us to interpret the State Farm insurance policy at issue. The interpretation of an insurance policy presents a question of law we review without deference to the circuit court or court of appeals. Shugarts v. Mohr, 2018 WI 27, ¶18, 380 Wis. 2d 512, 909 N.W.2d 402. "A policy's terms are interpreted as they would be understood from the perspective of a reasonable person in the position of the insured." Id., ¶20.

III

¶21 We address first the doctrine of issue preclusion and whether it serves as a bar to Dostal's claim for insurance coverage in this case.[6] Subsequently, we discuss the policy's resident relative and intentional acts exclusions.

A

¶22 "The doctrine of issue preclusion, formerly known as collateral estoppel, is designed to limit the relitigation of issues that have been actually litigated in a previous action."

---

[6] As an initial matter, State Farm asserts that Dostal forfeited any argument that issue preclusion applies because such an argument was not raised in the circuit court or court of appeals. However, even if the circuit court and court of appeals did not use the words "issue preclusion," their decisions clearly were grounded in the doctrine. State Farm highlights the focus of its argument as "whether insurance coverage is available under the terms of the Policy for Strand's . . . reckless acts when those very same acts were fully litigated and form the basis of his criminal conviction." In other words, this is an argument that previous litigation of the issue precludes the present claim, or that "issue preclusion" applies. As Dostal responds, "[t]he preclusive effect of Strand's conviction has always been and remains central to this dispute." The issue is therefore not forfeited.

Aldrich v. LIRC, 2012 WI 53, ¶88, 341 Wis. 2d 36, 814 N.W.2d 433.  A party asserting issue preclusion has the burden to establish that it should be applied.  Id.

¶23 Our analysis of an issue preclusion question proceeds in two steps.  We determine (1) whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally fair.[7] Id., ¶89.  If the analysis fails on the first prong, there is no need to address the second.  Paige K.B. ex rel. Peterson v. Steven G.B., 226 Wis. 2d 210, 224-25, 594 Wis. 2d 370 (1999).

---

[7] "The case law has set forth five factors, which are not exclusive or dispositive, to aid a circuit court in determining whether application of issue preclusion is fundamentally fair." Est. of Rille v. Physicians Ins. Co., 2007 WI 36, ¶38, 300 Wis. 2d 1, 728 N.W.2d 693.  Those factors are as follows:

> Courts may consider some or all of the following factors to protect the rights of all parties to a full and fair adjudication of all issues involved in the action:  (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of [issue preclusion] to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

Michelle T. by Sumpter v. Crozier, 173 Wis. 2d 681, 688-89, 495 N.W.2d 327 (1993).

¶24 In the first step of the analysis, we must determine whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment. Est. of Rille v. Physicians Ins. Co., 2007 WI 36, ¶37, 300 Wis. 2d 1, 728 N.W.2d 693. "An issue is 'actually litigated' when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" Randall v. Felt (In re Est. of Felt), 2002 WI App 157, ¶9, 256 Wis. 2d 563, 647 N.W.2d 373 (quoting Restatement (Second) of Judgments § 27 cmt. d (1980)). For issue preclusion to bar relitigation, the issue sought to be precluded must have been actually litigated previously. Lindas v. Cady, 183 Wis. 2d 547, 559, 515 N.W.2d 458 (1994). This stands in contrast to claim preclusion, which extends to all claims that either were or could have been asserted in the previous litigation. Id.

¶25 The insurance policy in this case sets forth that coverage is provided for an "occurrence." An "occurrence," in turn, is defined under the policy as an "accident," which results in, as relevant here, "bodily injury." The policy does not include a definition for "accident." In interpreting this term, we keep in mind that we read insurance policies from the perspective of a reasonable person in the position of the insured. Shugarts, 380 Wis. 2d 512, ¶20. We have previously described an "accident" as an event "occurring by chance or arising from unknown or remote causes" and "an event which takes place without one's foresight or expectation." Am. Fam. Mut.

10

Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶37, 268 Wis. 2d 16, 673 N.W.2d 65.

¶26 State Farm contends that the issue of Strand's fault was actually litigated in a prior action, namely the criminal case against Strand. It asserts that the jury's verdict convicting Strand of second-degree reckless homicide conclusively determined that, because Strand's conduct was reckless, Haeven's death could not have been an "accident" for purposes of insurance coverage.

¶27 The offense of second-degree reckless homicide is set forth as follows: "Whoever recklessly causes the death of another human being is guilty of a Class D felony." Wis. Stat. § 940.06(1). In turn, the statutes define criminal recklessness, as relevant here, to mean "that the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk." Wis. Stat. § 939.24(1).

¶28 Accordingly, in a prosecution for second-degree reckless homicide, the State has the burden to show beyond a reasonable doubt that two elements were present. See State v. Neumann, 2013 WI 58, ¶91, 348 Wis. 2d 455, 832 N.W.2d 560. The relevant jury instruction sets forth those elements as follows:

1. The defendant caused the death of (name of victim).

"Cause" means that the defendant's act was a substantial factor in producing the death.

2. The defendant caused the death by criminally reckless conduct.

11

"Criminally reckless conduct" means:

- the conduct created a risk of death or great bodily harm to another person; and

- the risk of death or great bodily harm was unreasonable and substantial; and

- the defendant was aware that (his)(her) conduct created the unreasonable and substantial risk of death or great bodily harm.

Wis JI——Criminal 1060 (2015).

¶29 We are asked to discern whether being aware of the risk that something might happen necessarily means that when that thing happens, it is not an "accident." Dostal asserts that this question should be answered in the negative. She contends that none of the elements of second-degree reckless homicide that the jury found would preclude a determination that Haeven's death was an accident.

¶30 State Farm, on the other hand, advances that in this analysis we should focus on the conduct itself and not the result of the conduct in determining whether conduct was an accident. In other words, State Farm points the court's attention to the "injury-causing event" and not the injury. See Schinner v. Gundrum, 2013 WI 71, ¶66, 349 Wis. 2d 529, 833 N.W.2d 685. Under this theory, even if Haeven's death was unintentional, Strand's conduct that led to the death was still not accidental because he was aware of the risk of death, and that is where our focus should be for purposes of coverage.

12

¶31 In beginning our analysis of this issue, we observe that there is no Wisconsin case law directly on point.[8] Thus, we may look to case law of other states for guidance. See Russ ex rel. Schwartz v. Russ, 2007 WI 83, ¶34 n.9, 302 Wis. 2d 264, 734 N.W.2d 874.

¶32 We find particularly informative two cases in which there was a conviction for a reckless crime and a later question of the preclusive effect of that conviction. The first of these cases is the New York court of appeals'[9] decision in Allstate Insurance Co. v. Zuk, 574 N.E.2d 1035 (N.Y. 1991). In that case, Zuk was cleaning and loading a shotgun in a hunting lodge

_____

[8] The dissent asserts that our analysis begins on the "wrong foot" because it does not focus on Wisconsin's direct action statute, Wis. Stat. § 632.24. Dissent, ¶69. The suggested preeminence of a direct action statute is perplexing because such focus is ultimately unnecessary.

As the dissent states, pursuant to the direct action statute "the liability to which the insurer is exposed is predicated upon the liability of the insured." Kranzush v. Badger State Mut. Cas. Co., 103 Wis. 2d 56, 75, 307 N.W.2d 256 (1981). In other words, Dostal's right to recover from State Farm depends on Strand's right to indemnification from State Farm. So the question becomes: when is State Farm required to indemnify Strand? According to the policy, the answer is: when there is an occurrence. And when is there an occurrence? When there is an accident, which as we determine, is an argument that is not precluded in this case. The direct action statute, following a more circuitous route, thus leads to an examination of whether there could be an "accident" here, the very same question this opinion already addresses. Consequently, it does not affect our analysis.

[9] Following a different naming scheme than the court system in Wisconsin, the court of appeals in New York is that state's highest court. See State v. Brownson, 157 Wis. 2d 404, 411, 459 N.W.2d 877 (Ct. App. 1990).

and accidentally shot and killed his friend, Smith. Id. at 1036. Zuk was charged and convicted of second degree manslaughter. Id. Smith's estate subsequently brought a wrongful death action against Zuk and Zuk sought defense and indemnification from Allstate, his homeowner's insurer. Id.

¶33 Allstate argued that Zuk's conviction for second degree manslaughter established as a matter of law that Zuk reasonably expected that his acts would cause Smith's death, and that this finding in the criminal proceeding should be given preclusive effect in the subsequent civil action. Id. at 1037. The court rejected Allstate's argument, concluding that "Zuk's criminal conviction does not collaterally block the civil litigation of the issue whether Smith's death could 'reasonably be expected to result' from Zuk's acts. Under this policy provision, in the factual context of this dispute and procedural framework, that issue cannot be resolved as a matter of law." Id. at 1036.

¶34 In arriving at this determination, the court observed that "Zuk's conviction of second degree manslaughter was necessarily based on a finding that he recklessly caused Smith's death." Id. at 1037. It therefore cited the definition of criminal recklessness under New York law, which is substantially similar to that under Wisconsin law:

> A person acts recklessly, in a criminal context, when that person is aware of and consciously disregards a substantial and unjustifiable risk of a result, where the risk is of such a nature and degree that to disregard it constitutes a gross deviation from the standard of conduct of a reasonable person.

14

Id. at 1037-38.

¶35 But the fact that the jury determined that Zuk was reckless did not necessarily mean that his conduct was reasonably to be expected to result in Smith's death as the policy exclusion's language required: "A person may engage in behavior that involves a calculated risk without expecting——no less reasonably——that an accident will occur. Such behavior, which may be reckless for criminal responsibility purposes, does not necessarily mean that the actor reasonably expected the accident to result." Id. at 1038. The Zuk court thus ultimately determined that "the issue whether Smith's death could 'reasonably be expected to result' from Zuk's acts was not necessarily determined in the criminal proceeding and was not identical to the issues that were determined there." Id.

¶36 Additional guidance comes from the Illinois appellate court's decision in Metropolitan Property and Casualty Insurance Co. v. Pittington, 841 N.E.2d 413 (Ill. App. Ct. 2005).[10] There,

---

[10] The dissent contends that the Illinois appellate court declined to follow Pittington in Allstate Indemnity Co. v. Hieber, 24 N.E.3d 139 (Ill. App. Ct. 2014). Dissent, ¶81. But nothing in the Hieber decision indicates that Pittington is no longer good law. All the Hieber court determined is that the facts of that case were more analogous to those in American Family Mutual Insurance Co. v. Savickas, 739 N.E.2d 445 (Ill. 2000), than to Pittington. Hieber, 24 N.E.3d at 144 ("We believe this case is more analogous to Savickas than Pittington.") Savickas has no application here because in that case, the insured at his criminal trial testified that "the gun did not go off accidentally" and that he "intentionally pointed the gun . . . and pulled the trigger while the gun was so aimed." Savickas, 739 N.E.2d at 382.

15

Pittington pleaded guilty to reckless conduct after shooting a man named Harrison. Id. at 414. Harrison's estate filed a negligence action against Pittington. Id. The insurer, Metropolitan, filed a declaratory judgment action asserting that any damages stemming from the shooting were not covered. Id. at 415.

¶37 The court addressed the preclusive effect of Pittington's guilty plea in light of the policy language that excluded from coverage injuries that were "in fact expected, anticipated or intended." Id. at 418. In concluding that there was no preclusive effect, the court observed that "[i]n pleading guilty to reckless conduct, Pittington admitted he performed an act that caused the harm or endangered the safety of Harrison with 'conscious disregard' of a substantial and unjustifiable risk." Id. However, such a plea was "in no way an admission that he expected, anticipated or intended to cause bodily harm to Harrington." Id. Although the Pittington court focused on the nature of a plea, and not a finding by a jury as was the situation in the present case, this distinction is immaterial for our purposes.

¶38 Zuk and Pittington are both factually and analytically analogous to the present case, and we find the approaches of those courts persuasive. Additionally, several other jurisdictions that have "considered the issue of whether reckless conduct bars indemnification under similar insurance policies . . . have found coverage when the insured's conduct is reckless." Royal Indem. Co. v. Love, 630 N.Y.S.2d 652, 654

16

(N.Y. Sup. Ct. 1995); see, e.g., Vappi & Co. v. Aetna Cas. & Sur. Co., 204 N.E.2d 273, 276 (Mass. 1965) ("Unintended or unforeseen consequences of reckless or negligent acts . . . may be within the definition of 'accident.'"); White v. Smith, 440 S.W.2d 497, 507 (Mo. Ct. App. 1969) ("But neither policy nor principle excludes from the category of damages 'caused by accident' for which coverage is afforded by a liability insurance policy, even damage which might be, for other purposes, regard[ed] as constructively intentional or damage resulting from wanton and reckless conduct.").

¶39 In particular, the Zuk court's statement that "[a] person may engage in behavior that involves a calculated risk without expecting——no less reasonably——that an accident will occur" is instructive here. Zuk, 574 N.E.2d at 1038. The court continued to explain that "[s]uch behavior, which may be reckless for criminal responsibility purposes, does not necessarily mean that the actor reasonably expected the accident to result." Id. So it is here. State Farm provides us with no authority compelling the conclusion that a reckless act can never be an "accident," and the analysis of the Zuk court, echoed in Pittington, persuasively concludes that the opposite is true.

¶40 Thus, in the context of this case, the issue of whether Strand's conduct was an "accident" was not actually litigated in the prior criminal proceeding. The jury here was presented with a question of guilty or not guilty and did not make a determination of what events actually occurred. It was

17

not asked to return a special verdict and made no specific factual findings aside from finding that the elements of the crime charged were proven beyond a reasonable doubt. Strand gave inconsistent accounts of the events leading to Haeven's death. We do not know if the jury accepted either of his explanations, or if it rejected both.[11]

---

[11] We acknowledge that the jury in Strand's criminal case was given an instruction referencing an "accident," but this fact does not alter our analysis. Specifically, the circuit court instructed the jury regarding what it needed to find to support a guilty verdict on the state-of-mind element of the reckless homicide offense as follows:

> Second, the defendant caused the death by what is called criminally reckless conduct. Criminally reckless conduct is defined as conduct that creates a risk of death or great bodily harm to another person, and the risk of death or great bodily harm was unreasonable and substantial, and that the defendant was aware that his conduct created an unreasonable and substantial risk of death or great bodily harm.

> The defendant, Mr. Strand, contends that he was not aware that his conduct created an unreasonable and substantial risk of death or great bodily harm, but that what happened was an accident.

> If the defendant did not act with an awareness required for this crime, he is not guilty of this crime.

This reference to an "accident" does not affect our analysis for two reasons. First, the circuit court's reference to an accident was made in the context of explaining what Strand's argument was. It did not indicate that "accident" was inconsistent with recklessness, but only specified that Strand argued that his conduct was an accident. Second, this reference does not address the same question as the definition of "accident" for purposes of insurance coverage as espoused in our case law, which takes into account an element of foreseeability of the result of an act. See Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶37, 268 Wis. 2d 16, 673 N.W.2d 65.

18

¶41 Likewise, if the jury rejected both of Strand's explanations, we do not know what alternative explanation it embraced. The jury additionally heard testimony from the State's expert that although a fall can result in a skull fracture as occurred in this case, "we also know from the literature from short falls . . . that children do not typically, or the vast majority do not incur any kind of brain injury from a short fall." Another expert testified: "I don't think hitting the counter and falling from that height would have resulted in those injuries."

¶42 Further, we do not know what act committed by Strand (if it accepted either of his explanations) was determined by the jury to be reckless. The jury heard testimony both that Strand dropped Haeven (whether it was from his knee while trying to burp her or when he turned and hit the kitchen island) and that he put her to bed without seeking medical attention. It could have concluded that the first act (dropping Haeven, however it happened) was an accident, but that it was reckless for Strand to put her directly to bed without first seeking medical care. In such a scenario, there would be an "accident" covered by the State Farm policy.[12]

---

[12] Nowhere does the dissent claim to know exactly what took place, nor could it. Its conclusion that Strand's conviction of a reckless crime precludes an "accident" completely disregards the possibility that Strand committed two acts, one accidental and one reckless. The jury's verdict gives no insight into whether this was the case, and the dissent reads far too much into the verdict to reach its conclusion.

¶43 Additionally, we recognize that our conclusion is consistent with the reading of the word "accident" by a reasonable insured. See Shugarts, 380 Wis. 2d 512, ¶20. The term is not defined in the policy, but under a common understanding of "accident," it would seem that even if one engages in reckless conduct, a resulting injury can still be, in the common parlance of the word, "accidental." See Sheehan v. Goriansky, 72 N.E.2d 538, 543 (Mass. 1947) (determining that wanton or reckless conduct, "which is only constructively intentional does not, for that reason alone, fall outside the category of an injury 'caused by accident'" because "[t]o the ordinary mind such a distinction would be wholly artificial").

¶44 For example, if a person is driving 90 miles per hour on a city street, such conduct would no doubt be reckless, but that doesn't mean it isn't an "accident" if the driver unintentionally hits a pedestrian. Such an event may still occur "by chance" or "without one's foresight or expectation." See Am. Girl, 268 Wis. 2d 16, ¶37; cf. Fetherston v. Parks, 2014 WI App 2, ¶15, 352 Wis. 2d 472, 842 N.W.2d 481 (concluding that an intentional acts exclusion did not apply to bar coverage where "Parks did not intend to injure the Fetherstons when he operated his vehicle in a reckless manner").[13]

---

[13] This conclusion is additionally supported by an illustration included in the comments to the Restatement (Second) of Judgments. Specifically, comment f to Restatement (Second) of Judgments § 85, which addresses the effect of a criminal judgment in a subsequent civil action, contains the following example (illustration 10):

¶45 We therefore conclude that issue preclusion does not bar Dostal from seeking insurance coverage for her claims against Strand. The issue of whether Strand's conduct constituted an "accident" was not actually litigated in the prior criminal proceeding.

B

¶46 Having concluded that Dostal's claim for insurance coverage is not barred by the doctrine of issue preclusion, we

---

D inflicts a blow on X as a result of which X dies. D is convicted of intentional homicide. P, administrator of X's estate, brings an action against D for wrongful death, alleging D's act was negligent. I had previously issued a policy of liability insurance to D, insuring liability for D's negligent acts but excluding intentional acts. In P's action against D, P is not precluded by the criminal conviction from showing that D's act was negligent rather than intentional.

Although the conviction here was for reckless homicide rather than intentional, the same principle holds. The dissent incorrectly claims that this illustration says nothing about insurance recovery. See dissent, ¶68. Indeed, the illustration states that "P is not precluded by the criminal conviction from showing that D's act was negligent rather than intentional." If an act is negligent rather than intentional, it may be a covered "occurrence" pursuant to the insurance policy referenced earlier in the illustration.

turn next to address the resident relative and intentional acts exclusions in the policy.[14]

¶47 We begin with the resident relative exclusion. This exclusion in the policy excludes coverage for "bodily injury to you or any insured within the meaning of part a. or b. of the definition of insured." In turn, the policy defines "insured" as "you and, if residents of your household: a. your relatives; and b. any other person under the age of 21 who is in the care of a person described above."

¶48 Case law sets forth the inquiry for determination of whether a person is a "resident of your household." "A determination of residency in a household is fact specific to each case." Seichter v. McDonald, 228 Wis. 2d 838, 845, 599 N.W.2d 71 (Ct. App. 1999) (citing Schoer v. West Bend Mut. Ins. Co., 473 N.W.2d 73, 76 (Minn. Ct. App. 1991)).

¶49 Such an analysis "requires a thorough examination of all relevant facts and circumstances." Londre by Long v. Cont'l W. Ins. Co., 117 Wis. 2d 54, 57, 343 N.W.2d 128 (Ct. App. 1983).

---

[14] While our analysis is of course based on the exclusions that are present in the policy, we observe at the outset that the State Farm policy does not include an exclusion precluding coverage for all criminal acts. Such criminal acts exclusions are included in some policies. See West Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc., 2019 WI 19, ¶38, 385 Wis. 2d 580, 923 N.W.2d 550; L.L. v. Med. Protective Co., 122 Wis. 2d 455, 463, 362 N.W.2d 174 (Ct. App. 1984). If State Farm had included such a policy exclusion, this case likely would not be before us. State Farm chose not to include a criminal acts exclusion here, and is thus left to rely on the exclusions it did write in this policy.

The factfinder must consider whether the person and the named insured are:

> (1) living under the same roof; (2) in a close, intimate and informal relationship, and (3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

Id. at 57-58. In conducting this analysis, the factfinder additionally considers (1) the age of the person, (2) whether a separate residence is established, (3) the self-sufficiency of the person, (4) the frequency and duration of the stay in the family home, and (5) intent to return. Seichter, 228 Wis. 2d at 845. "Personal possessions remaining in the home and that the home continues to be the mailing address may be considered but are not dispositive." Id. (citing Schoer, 473 N.W.2d at 76).

¶50 State Farm contends that the resident relative exclusion applies to bar coverage here. In State Farm's view, Haeven was a "resident" of Strand's household as a matter of law. It points to facts in the record indicating that the paternity court had ordered Strand "frequent" physical placement of Haeven, that Strand physically cared for Haeven, and that Strand intended the duration of his relationship with Haeven to be substantial such that he would consider her when contracting about insurance.

¶51 However, contrary to State Farm's argument, an examination of Dostal's deposition in this case indicates that

23

Haeven's "residency" with Strand is disputed. According to Dostal's deposition testimony, Strand only cared for Haeven without Dostal present four times, a count which includes two overnight stays. Dostal further testified that there was no formal schedule for placement and that Strand "was usually too busy or didn't have time for the baby or didn't want her over there." Given this testimony, we cannot conclude that Haeven was a resident relative of Strand as a matter of law.

¶52 The determination of whether one is a resident relative for insurance purposes is highly fact specific. Id. Here, the parties' submissions demonstrate that there are genuine issues of material fact as to the question of whether Haeven was a resident relative of Strand. Accordingly, summary judgment is inappropriate on this issue.

¶53 We turn next to the intentional acts exclusion in the policy, which sets forth that the coverage does not apply to "bodily injury or property damage . . . which is either expected or intended by the insured."

¶54 For purposes of an intentional acts exclusion, intent to injure may be inferred where injury is substantially certain to result from an insured's intentional conduct. K.A.G. by Carson v. Stanford, 148 Wis. 2d 158, 163, 434 N.W.2d 790 (Ct. App. 1988). If the conduct is intentional and if the conduct is substantially certain to cause injury, we can infer intent to injure only "if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law." Id.

24

¶55 We cannot, however, "infer intent to injure as a matter of law merely because the insured's intentional act violated the criminal law." Loveridge v. Chartier, 161 Wis. 2d 150, 171, 468 N.W.2d 146 (1991). Conviction of a crime gives rise to an inference that an insured intended injury as a matter of law in two circumstances only: (1) if intent to injure is an element of the crime, and (2) if the crime in question involves the insured committing an intentional act that carries with it a substantial risk of injury or death. Id. at 172 (citing Poston v. U.S. Fid. & Guar. Co., 107 Wis. 2d 215, 219, 320 N.W.2d 9 (Ct. App. 1982); Raby v. Moe, 153 Wis. 2d 101, 114, 450 N.W.2d 452 (1990)).

¶56 Intent is plainly not an element of a reckless crime. See Wis. Stat. §§ 939.24(1), 940.06(1). Thus, if the intentional acts exclusion is to apply, the crime must involve the insured committing an intentional act that carries a substantial risk of injury or death. As analyzed above, a determination that Strand's conduct was reckless does not preclude a finding that his conduct was an accident for purposes of insurance coverage. If his conduct was indeed an "accident," such a determination would compel the additional conclusion that his conduct was surely not "intentional" so as to indicate that the exclusion applies.

¶57 There are therefore genuine issues of material fact regarding whether Strand's conduct was "intentional" such that the intentional acts exclusion applies. Accordingly, summary judgment is inappropriate on this issue.

25

IV

¶58 In sum, we conclude that issue preclusion does not bar Dostal from seeking insurance coverage for her claims against Strand. The issue of whether Strand's conduct constituted an "accident" was not actually litigated in the prior criminal proceeding. Further, we conclude that there are genuine issues of material fact regarding the application of the resident relative and intentional acts exclusions such that summary judgment is inappropriate.

¶59 Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court.

¶60 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* I dissent because 12 jurors at Strand's criminal trial unanimously decided beyond a reasonable doubt that Haeven's death was not an "accident," and this precludes relitigating the issue of Strand's coverage. Because the jury's verdict is controlling in this case and cannot be relitigated, that ends the analysis as to Strand——he has no coverage under his policy with State Farm, which grants coverage for bodily injury caused by an "accident." Since Strand has no claim against State Farm, as his causing Haeven's death was beyond a reasonable doubt not an accident, Dostal is also precluded from making a claim against State Farm under Strand's policy. Dostal has no independent claim against State Farm, and she cannot recover under Strand's policy any more than Strand could.

¶61 Strand's conviction for his act of reckless homicide, killing his own child Haeven, precludes Strand from claiming that Haeven's death was an accident. In other words, because 12 jurors concluded beyond a reasonable doubt that Strand's actions caused Haeven's death and that Strand was "aware" that he "create[d] an unreasonable and substantial risk" of her death, Wis. Stat. § 939.24(1), Haeven's death was not an unforeseen "accident" under Strand's insurance policy, and he is precluded from claiming coverage. As a result, because Strand has no insurance coverage, Dostal cannot claim that he does.

¶62 Dostal attempts to circumvent this determination that Strand's conduct was not an accident by suing State Farm under

1

Wisconsin's direct action statute, Wis. Stat. § 632.24 (2021-22).[1] However, if Strand has no claim——which he does not because his conviction for second-degree reckless homicide determined beyond a reasonable doubt that this was not an "accident"——then Dostal can have no claim direct or otherwise against State Farm under Strand's policy. While she may have a claim against Strand for his criminally reckless killing of Haeven, this is not a risk for which Strand purchased insurance. Strand's insurance contract does not provide Dostal with more coverage than it would provide its own insured. The circuit court and court of appeals therefore correctly concluded that State Farm was entitled to summary judgment and declaratory judgment on the issue of coverage.

¶63 The majority contorts its analysis in order to reach a result of coverage in this very sad and unfortunate case. It ignores the facts of this case and the law of our state, instead reaching out to foreign authorities to create insurance that was never provided by contract. As we have interpreted the term "accident" in insurance contracts, Strand's act of "criminal recklessness" cannot be an "accident" under his insurance policy with State Farm because Strand was "aware" that he created an "unreasonable and substantial" risk of Haeven's death. Wis. Stat. § 939.24(1). Strand's prior conviction for second-degree reckless homicide therefore precludes him from asserting that Haeven's death was an "accident" for which he is granted

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

coverage. The majority mistakenly frames the issue as whether issue preclusion binds Dostal when the issue is actually whether it binds Strand. Because Strand has no claim against State Farm and cannot relitigate that issue, Dostal has no claim either.

¶64 The issue of whether Strand's killing of Haeven was an "accident" was fully litigated and unanimously decided beyond a reasonable doubt in Strand's criminal trial, and precluding Strand from relitigating that issue comports with fundamental fairness. Issue preclusion therefore prevents Strand from asserting he has coverage under his policy with State Farm for recklessly killing his own daughter, and Dostal cannot create coverage that does not otherwise exist by suing State Farm under the direct action statute. I dissent.

I

¶65 Strand seeks relitigation of this issue through Dostal's suit under Wisconsin's direct action statute. However, Dostal cannot recover on Strand's policy with State Farm because Strand has no coverage as a matter of law. Wisconsin's direct action statute permits Dostal to sue State Farm directly as opposed to first suing Strand and then Strand filing a claim. Dostal can only recover what Strand would be able to by filing a claim——in this case, nothing.

¶66 Dostal brought her claim against State Farm under Wisconsin's direct action statute:

> Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or

3

> property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

Wis. Stat. § 632.24. "The direct action statute generally endeavors to save litigation and reduce expense by determining the rights of all parties in a single action involving the insurance carrier . . . ." Hull v. Glewwe, 2019 WI App 27, ¶38, 388 Wis. 2d 90, 931 N.W.2d 266 (citing Est. of Otto v. Physicians Ins. Co. of Wis., 2008 WI 78, ¶36 n.21, 311 Wis. 2d 84, 751 N.W.2d 805). In cases under the direct action statute, the plaintiff "steps into the shoes of the tortfeasor and can assert any right of the tortfeasor against the insurer." 7A Couch on Insurance § 104:13 (3d ed. 2022) (emphasis added). Accordingly, "the liability to which the insurer is exposed is predicated upon the liability of the insured." Kranzush v. Badger St. Mut. Cas. Co., 103 Wis. 2d 56, 75, 307 N.W.2d 256 (1981). In other words, a plaintiff bringing a direct action cannot recover against a tortfeasor's insurer unless the tortfeasor would himself be able to recover.

¶67 The implication for this case is that Dostal steps into Strand's shoes. Having no claim against State Farm independent from Strand and his policy, Dostal can recover from State Farm only if Strand could do so. Therefore, the question in this case is not whether Dostal is precluded from claiming there was an accident. The question is whether Strand is precluded from doing so. Because issue preclusion applies against Strand, Strand has no coverage for Dostal to claim.

4

¶68 This conclusion does not prevent Dostal from bringing a claim against Strand and holding him personally liable for Haeven's death. It merely prevents Strand from being indemnified by his insurer for his criminally reckless acts. This distinction is clearly lost on the majority. The majority cites an example in the Restatement (Second) of Judgments § 85 comment f as support. Majority op., ¶44 n.13. That example only says that a plaintiff in Dostal's position would not be precluded from bringing a claim against the tortfeasor, limiting the discussion to "[plaintiff's] action against [the tortfeasor]." Restatement (Second) of Judgments § 85 cmt. f. It says nothing about whether the tortfeasor would be able to recover under his insurance policy.

¶69 Surely Dostal can still sue Strand and recover against him personally, but that does not mean Strand——and, through the direct action statute, Dostal——is entitled to payment by State Farm. Strand has no coverage under his policy with State Farm for his criminally reckless acts. Dostal cannot create coverage that would not otherwise exist simply by suing under the direct action statute. The majority's failure to recognize the importance of the direct action statute leads the majority to start off its analysis on the wrong foot.

## II

¶70 Strand's criminal trial conclusively determined that Haeven's death was not an "accident." Twelve jurors heard evidence and argument regarding the circumstances surrounding Haeven's death. Strand argued that he was not "aware" that he

5

"create[d] an unreasonable and substantial risk of [Haeven's] death, but instead that her death was an "accident." Relitigation of this issue is therefore precluded. Whether Strand caused Haeven's death by "accident" was decided before a jury—under the high standard of "beyond a reasonable doubt" rather that the lower civil "preponderance of the evidence" standard—and 12 jurors unanimously decided to reject Strand's defense. Thus, the first requirement for issue preclusion to apply is satisfied because the issue of whether Strand's killing of Haeven was an "accident" was "actually litigated and determined" by the jury in his criminal trial. Aldrich v. LIRC, 2012 WI 53, ¶97, 341 Wis. 2d 36, 814 N.W.2d 433 (quoting Est. of Rille v. Physicians Ins. Co., 2007 WI 36, ¶37, 300 Wis. 2d 1, 728 N.W.2d 693).

¶71 A jury of 12 unanimously found Strand guilty, beyond a reasonable doubt, of second-degree reckless homicide contrary to Wis. Stat. § 940.06(1). As the majority correctly notes, "criminal recklessness" is defined by statute to mean "that the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk." Wis. Stat. § 939.24(1) (emphasis added). In contrast, mere "criminal negligence" is defined as "conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another." Wis. Stat. § 939.25(1) (emphasis added). The defining feature of recklessness making it a higher degree of culpability is the actor's actual awareness of the risk.

6

¶72 However, the majority's analysis of our state law stops there. Notably absent from the majority's analysis is any recognition of the fact that we have previously interpreted the terms "occurrence" and "accident" as used in insurance policies. We have said that an "accident" is "an event which takes place without one's foresight or expectation. [An undesirable] result, though unexpected, is not an accident; the means or cause must be accidental." Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶37, 268 Wis. 2d 16, 673 N.W.2d 65 (emphasis added) (quoting Accident, Black's Law Dictionary 15 (7th ed. 1999)). For a particular action to qualify as an "accident," the resulting injury must have been "unexpected" or "unforeseen" from the standpoint of the insured. Schinner v. Gundrum, 2013 WI 71, ¶71, 349 Wis. 2d 529, 833 N.W.2d 685 (holding injuries resulting from providing alcohol to underage persons were not accidents).

¶73 The jury in Strand's criminal trial unanimously concluded, beyond a reasonable doubt, that Strand was aware that his actions created an unreasonable and substantial risk to Haeven. The jury concluded beyond a reasonable doubt that Strand was "aware of that risk." Wis. Stat. § 939.24(1). If the risk of Haeven's death were unexpected or unforeseen to Strand, such a finding would not be possible. This is clear from the circuit court's instructions to the jury:

> The defendant, Mr. Strand, contends that he was not aware that his conduct created an unreasonable and substantial risk of death or great bodily harm, but that what happened was an accident.

7

> If the defendant did not act with an awareness required for this crime, he is not guilty of this crime.

(Emphasis added.)

¶74 The majority dismisses the circuit court's use of the term "accident" because it "was made in the context of explaining what Strand's argument was" and "did not indicate that 'accident' was inconsistent with recklessness." Majority op., ¶40 n.11. In other words, the majority reads the circuit court's use of the term "accident" as consistent with "recklessness." This is a tortured reading of the circuit court's instruction. If an accident were consistent with a criminally reckless act, Strand's argument that he committed only an accident would be akin to an admission of guilt. The circuit court obviously used the term "accident" understanding that reckless conduct is not accidental.

¶75 The majority also argues the circuit court's use of "accident" while instructing the jury "does not address the same question as the definition of 'accident' for purposes of insurance coverage as espoused in our case law, which takes into account an element of foreseeability of the result of an act." Majority op., ¶40 n.11. This entirely ignores what the circuit court was explaining when it used the term "accident." The court was instructing the jury that a guilty verdict required finding that Strand was "aware that his conduct created an unreasonable and substantial risk of death or great bodily harm" (emphasis added)——that is, the harm had to have been foreseeable. The circuit court used the term "accident" in a manner consistent with our precedent and the term's common

8

understanding, and the jury found, unanimously and beyond a reasonable doubt, that Haeven's death was not an accident.

¶76 As the terms are defined in our statutes and precedent, the definitions of "criminal recklessness" and "accident" are inconsistent with each other. The circuit court understood this and instructed the jury accordingly, as Wisconsin courts have done before. See, e.g., Wis. JI—Criminal 772 (2005) (instruction on "accident" defense); State v. Grant, No. 2010AP2272-CR, unpublished slip op., ¶11 (Wis. Ct. App. Sept. 3, 2011) (per curiam) ("A defendant on trial for a crime involving reckless conduct may offer the defense of accident to defeat the mental state of awareness of risk necessary to prove guilt."). In finding Strand guilty of recklessly killing Haeven, the jury explicitly rejected the possibility that her death was an "accident." Strand's prior criminal proceeding therefore resolved the issue of whether there was an accident, and this determination "was essential to the judgment," satisfying the first requirement of issue preclusion.[2] Aldrich, 341 Wis. 2d 36, ¶97.

¶77 The majority nonetheless concludes the jury in Strand's criminal trial did not determine whether Haeven's death was an accident, making no attempt whatsoever to resolve this case under Wisconsin law. Instead, the majority summarily

---

[2] The majority criticizes my analysis because I do not "claim to know exactly what took place" when Haeven died. Majority op., ¶42, n.12. The majority misses the point. The jury at Strand's criminal trial determined beyond a reasonable doubt that Strand's actions causing Haeven's death were not an accident regardless of what those actions were.

9

concludes, "we observe that there is no Wisconsin case law directly on point. Thus, we may look to case law of other states for guidance." Majority op., ¶31. None of the authorities the majority identifies make its conclusion more persuasive.

¶78 Instead of turning to Wisconsin law, the majority first looks to the New York Court of Appeals' decision in Allstate Insurance Co. v. Zuk, 574 N.E.2d 1035 (N.Y. 1991). Majority op., ¶32. The majority finds the following statement from Zuk particularly persuasive: "A person may engage in behavior that involves a calculated risk without expecting——no less reasonably——that an accident will occur. Such behavior, which may be reckless for criminal responsibility purposes, does not necessarily mean that the actor reasonably expected the accident to result." Zuk, 574 N.E.2d at 1038; majority op., ¶35. The majority also relies on a similar holding by Illinois' intermediate appellate court in Metropolitan Property & Casualty Insurance Co. v. Pittington, 841 N.E.2d 413 (Ill. App. Ct. 2005); majority op., ¶36. That court concluded that an admission of criminal recklessness was "in no way an admission that he expected, anticipated or intended to cause" the resulting harm. Pittington, 841 N.E.2d at 418.

¶79 This explanation is quite transparently nonsensical. The jury found that Strand caused Haeven's death while "aware" that he "create[d] an unreasonable and substantial risk" of her "death or great bodily harm." Wis. Stat. § 939.24(1). The majority concludes it is somehow possible that Strand was

10

"aware" that he "create[d] an unreasonable and substantial risk" of Haeven's death but "reasonably" did not expect it. Id. The jury at Strand's criminal trial concluded Strand was aware he created a risk to Haeven that was "unreasonable." The majority offers no explanation as to how——under Wisconsin law——the jury could have found that Strand was both aware of, but reasonably did not expect, an unreasonable risk. The jury's unanimous finding, beyond a reasonable doubt, that Strand was "criminally reckless" means that Strand was aware of and therefore expected the risk he created, and he unreasonably disregarded that risk.

¶80 Furthermore, the majority's reliance on foreign authorities treats this issue as if it were settled. That is not the case. Several courts in other jurisdictions have come out on the opposite side, concluding that reckless conduct is not accidental. See, e.g., Amica Mut. Ins. Co. v. Mutrie, 105 A.3d 595, 599 (N.H. 2014) ("[W]e conclude that because a reasonable person in Mutrie's position would know that some harm would result from her alleged knowing, reckless, and wanton support and facilitation of her son's criminal drug activity, Mutrie's conduct was inherently injurious, and, therefore, cannot be considered accidental. Therefore, her conduct does not constitute an 'occurrence' as is necessary to trigger coverage."); Russ v. Great Am. Ins. Cos., 464 S.E.2d 723, 726 (N.C. Ct. App. 1995) (holding "a showing that the defendant acted with 'reckless indifference to the likelihood' that his or her acts 'will cause severe emotional distress'" precluded coverage); Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins.

11

Co. of Wis., 791 N.E.2d 816, 830 (Ind. Ct. App. 2003) (concluding a claim requiring proof of "knowledgeable or reckless conduct" "does not arise from an 'accident' and, thus, is not the result of an 'occurrence'"); Ohio Cas. Ins. Co. v. Terrace Enters., Inc., 260 N.W.2d 450, 452 (Minn. 1977) (quoted source omitted) ("If the single insured is allowed through intentional or reckless acts to consciously control the risks covered by the policy, a central concept of insurance is violated.").

¶81 As a matter of fact, following the Appellate Court of Illinois' decision in Pittington, upon which the majority relies, that court has since declined to follow Pittington. In Allstate Indemnity Co. v. Hieber, 24 N.E.3d 139, 144 (Ill. Ct. App. 2014), the Appellate Court of Illinois concluded that an insured's conviction for criminally reckless conduct precluded the insured from later arguing the resulting bodily injury was not "reasonably [] expected." In so holding, that court rejected the dissent's argument which "draws a distinction between an injury resulting from criminally reckless conduct and one 'expected' by the insured," id. at 144-45, the same reasoning the majority relies upon in this case.[3]

_____

[3] Though the majority disputes the degree to which Allstate Indemnity Co. v. Hieber, 24 N.E.3d 139 (Ill. Ct. App. 2014), actually departed from Metropolitan Property & Casualty Insurance Co. v. Pittington, 841 N.E.2d 413 (Ill. App. Ct. 2005), it nonetheless fails to contend with the more important fact that Allstate Indemnity Co. repudiates the majority's reasoning. See majority op., ¶36 n.10.

12

¶82 The majority's reliance on foreign authorities without any real analysis is a clear attempt to avoid the result compelled under Wisconsin law: the jury's unanimous conclusion beyond a reasonable doubt that Strand recklessly caused Haeven's death precludes a finding that there was an "accident" under his insurance policy. Neither logic nor legal authority supports the majority's holding.

III

¶83 Strand has no coverage under his policy with State Farm for his criminally reckless conduct. The jury in his criminal trial concluded this beyond a reasonable doubt, and it "comports with principles of fundamental fairness" to prevent Strand from relitigating this issue. Aldrich, 341 Wis. 2d 36, ¶98. Both requirements of issue preclusion are therefore met, and Strand cannot relitigate whether he has coverage for killing his daughter under his policy with State Farm. Because Strand has no claim against State Farm under his policy, neither does Dostal.

¶84 Issue preclusion requires consideration of fundamental fairness because the doctrine binds nonparties to prior litigation. See Kruckenberg v. Harvey, 2005 WI 43, ¶57, 279 Wis. 2d 520, 694 N.W.2d 879 (explaining the difference between issue preclusion and claim preclusion). In this case, fundamental fairness is not a concern because Strand's criminal trial is not binding any nonparties to that trial. It only binds Strand by precluding him from claiming that his criminally

13

reckless act was a covered "accident" absolving him of liability to Dostal.

¶85 Established factors for assessing fundamental fairness weigh in favor of precluding Strand from claiming Haeven's death was an "accident."

> Courts may consider some or all of the following factors to protect the rights of all parties to a full and fair adjudication of all issues involved in the action: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

Paige K.B. v. Steven G.B., 226 Wis. 2d 210, 220-21, 594 N.W.2d 370 (1999) (quoting Michelle T. v. Crozier, 173 Wis. 2d 681, 688-89, 495 N.W.2d 327 (1993)). Strand was a party to his own criminal trial and had plenty of opportunity to litigate the issue, including the opportunity to appeal the judgment against him. There is no evidence that Strand's trial was inadequate in any particular way. The jury found beyond a reasonable doubt—a higher standard than the "preponderance of the evidence" standard Strand would have to satisfy in a claim against his insurer—that Strand recklessly killed Haeven.

14

Finally, Strand had plenty opportunity and incentive to fully litigate his case and avoid criminal penalty.

¶86 The fundamental fairness factors therefore weigh in favor of precluding Strand from relitigating the issue of whether his actions were accidental rather than criminally reckless. If Strand were to file a claim under his policy with State Farm, he would be precluded from asserting that Haeven's death was an "accident" and receive no coverage. Through the direct action statute, Dostal steps into Strand's shoes. Because Strand cannot recover under his own policy with State Farm, neither can Dostal.

IV

¶87 The jury in Strand's criminal trial conclusively determined, beyond a reasonable doubt, that Strand caused Haeven's death and that he was "aware" that his actions created a "unreasonable and substantial" risk of her death. Wis. Stat. § 939.25(1). The jury's verdict foreclosed Strand from later arguing that Haeven's death was an "accident." Because Strand has no coverage under State Farm's policy, Dostal cannot recover against State Farm either.

¶88 The majority avoids this inevitable conclusion by ignoring the law of our state and blindly relying on foreign authorities. It makes no effort to scrutinize the cases it cites and summarily labels them "persuasive." As a result, the majority interprets Strand's homeowner's insurance policy as providing "Reckless Homicide Insurance," indemnifying policyholders for their decisions to disregard known

15

"unreasonable and substantial risk[s] of death or great bodily harm." Wis. Stat. § 939.25(1). This is absurd.

¶89 For the foregoing reasons, I respectfully dissent.

¶90 I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and REBECCA GRASSL BRADLEY join this dissent.